**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| IN RE APPLICATION OF JOESLEY MENDONCA BATISTA, WESLEY MENDONCA BATISTA, FRANCISCO DE ASSIS E SILVA, AND RICARDO SAUD FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' *EX PARTE***
**EMERGENCY APPLICATION AND PETITION FOR AN ORDER TO CONDUCT**
**DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**
**PURSUANT TO 28 U.S.C. § 1782**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

I.    FACTUAL BACKGROUND .................................................................................5

    A.    The Parties ................................................................................................5

    B.    Investigations in Brazil and the United States ..........................................6

    C.    Backer McKenzie and Trench Rossi Hire Marcello Miller .......................6

    D.    The Cooperation Agreements ...................................................................8

    E.    The Proceedings Before the Federal Supreme Court of Brazil.................8

    F.    The Whistleblower Reaches Out to Petitioners About Respondent and Respondent's Memorandum .................................................................11

II.    ARGUMENT .....................................................................................................12

    A.    Legal Framework ...................................................................................12

    B.    Petitioners Satisfy the Three Statutory Requirements of 28 U.S.C. § 1782. .........15

        1.    Respondent Is "Found" in the Eastern District of Virginia. .....................15

        2.    The Discovery Sought Is for Use in Foreign Proceedings.........................15

        3.    Petitioners Are "Interested Persons."........................................................17

    C.    All of the Discretionary Factors Under Section 1782 Weigh in Favor of Permitting the Discovery Petitioners Seek. .........................................18

        1.    The First *Intel* Factor Favors Granting Discovery.....................................18

        2.    The Second *Intel* Factor Favors Granting Discovery. ...............................19

        3.    The Third *Intel* Factor Favors Granting Discovery. ..................................20

        4.    The Fourth *Intel* Factor Favors Granting Discovery.................................21

III.    CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Al Fayed v. C.I.A.*,
  229 F.3d 272 (D.C. Cir. 2000) ................................................................. 15

*Al Fayed v. United States*,
  210 F.3d 421 (4th Cir. 2000) ................................................................. 14

*Alexander v. Fed. Bureau of Investigation*,
  194 F.R.D. 316 (D.D.C. 2000) ................................................................. 22

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*,
  121 F.3d 77 (2d Cir. 1997) ................................................................. 20

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
  No. 17-1466 (BAH), 2017 WL 3708028 (D.D.C. Aug. 18, 2017) ..................................... 14, 21

*In re Barnwell Enters. Ltd*,
  265 F. Supp. 3d 1 (D.D.C. 2017) ................................................................. 16

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ................................................................. 15

*In re Caratube Int'l Oil Co.*,
  730 F. Supp. 2d 101 (D.D.C. 2010) ................................................................. 19

*In re Chevron Corp.*,
  No. 7:10-MC-00067, 2010 WL 4883111 (W.D. Va. Nov. 24, 2010) ................................... 19, 20

*Complaint, J&F Investimentos S.A. v. Baker & McKenzie LLP*,
  2018 CA 002569M (D.C. Super. Ct. Sept. 10, 2018) ................................................................. 9

*In re DiGiulian*,
  314 F. Supp. 3d 1 (D.D.C. 2018) ................................................... 14, 18, 19, 20

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002) ................................................................. 15

*In re El-Atari*,
  No. 09-14950-BFK, 2013 WL 593705 (Bankr. E.D. Va. Feb. 14, 2013) ................................... 4

*ePlus Inc. v. Lawson Software, Inc.*,
  280 F.R.D. 247 (E.D. Va. 2012) ................................................................. 4

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095, 1100 (2d Cir.1995) ........................................................................ 19

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*,
   No. 13-MC-0266, 2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ....................................... 13, 22

*In re Gianoli Aldunate*,
   3 F.3d 54 (2d Cir. 1993) ........................................................................................ 15

*Gushlak v. Gushlak*,
   486 Fed. Appx. 215 (2d Cir. 2012) .......................................................................... 13

*HT S.R.L. v. Velasco*,
   125 F. Supp. 3d 211 (D.D.C. 2015) ......................................................................... 14

*In re Imanagement Servs. Ltd.*,
   No. Civ.A. 05-2311(JAG), 2006 WL 547949 (D.N.J. Mar. 3, 2006) ....................................... 20

*Infineon Techs. AG v. Green Power Techs. Ltd.*,
   247 F.R.D. 1 (D.D.C. 2005) ................................................................................... 21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ..................................................................................... *passim*

*J&F Investimentos S.A. v. Baker & McKenzie LLP*,
   2018 CA 002569M (D.C. Super. Ct. Sept. 10, 2018) ...................................................... 9

*Lancaster Factoring Co. v. Mangone*,
   90 F.3d 38 (2d Cir. 1996) ...................................................................................... 15

*In re Letter of Request from Supreme Ct. of Hong Kong*,
   138 F.R.D. 27 (S.D.N.Y. 1991) ............................................................................... 13

*In re Malev Hungarian Airlines*,
   964 F.2d 97 (2d Cir. 1992) .................................................................................... 14

*In re Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
   315 F. Supp. 3d 269 (D.D.C. 2018) ........................................................................ 13

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
   Civ. No. 1:08-CV-269(LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ................... 21

*In re Nat'l Syndicate for Elec. Energy*,
   No. 1:13-MC-20 GBL/TCB, 2014 WL 130973 (E.D. Va. Jan. 14, 2014) .............................. 14

*Oncology Found. v. Avanza Dev. Servs., LLC,*
  No. CV PX 17-1445, 2017 WL 2376769 (D. Md. May 30, 2017) ......................................... 17

*In re Request for Int'l Judicial Assistance (Letter Rogatory) from the Federative Republic of Brazil,*
  687 F. Supp. 880 (S.D.N.Y. 1988) ...................................................................................... 16

*In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic,*
  748 F. Supp. 2d 522 (E.D. Va. 2010) ................................................................... 14, 15, 16, 18

*In re Rivada Networks,*
  230 F. Supp. 3d 467 (E.D. Va. 2017) .................................................................................. 13

*In re Servicio Pan Americano de Proteccion, C.A.,*
  354 F. Supp. 2d 269 (S.D.N.Y. 2004) .................................................................................. 20

*In re Société d'Etude de Réalisation et d'Exploitation Pour le Traitement du Mais,*
  No. 13-MC-0266, 2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ............................................ 13

*In re Sumar,*
  123 F.R.D. 467 (S.D.N.Y. 1988) ......................................................................................... 16

*In re Veiga,*
  746 F. Supp. 2d 8 (D.D.C. 2010) ......................................................................... 17, 18, 21, 22

## Rules, Statutes, & Treaties

28 U.S.C. § 1782 ......................................................................................................... *passim*

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
  Mar. 18, 1970, Mar. 18, 1970, U.N.T.S. 12,140 .................................................................. 20

Treaty on Mutual Legal Assistance in Criminal Matters,
  U.S.-Braz., Feb. 21, 2001, T.I.A.S. No. 12,889 ................................................................... 20

Va. R. Prof'l Conduct 1.4 ..................................................................................................... 4

Petitioners Joesley Mendonça Batista ("Joesley Batista"), Wesley Mendonça Batista ("Wesley Batista"), Francisco de Assis e Silva ("Assis"), and Ricardo Saud ("Saud", collectively, "Petitioners"), respectfully submit this Memorandum of Law in support of their Emergency Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782") for an order authorizing them to obtain limited discovery from Joan Meyer ("Respondent"), in the form of the attached subpoena *duces tecum* and subpoena *ad testificandum* (the "Subpoenas") (the "Application").[1]

## PRELIMINARY STATEMENT

Petitioners are currently in proceedings before the Federal Supreme Court of Brazil, which is expected to rule, *within weeks*, on an application by Brazilian prosecutors to void cooperation agreements shielding Petitioners from criminal prosecution and possible imprisonment ("Brazilian Proceedings").  Days ago, Petitioners' U.S. counsel was approached unannounced by a whistleblower who advised that Joan Meyer, part of the Baker & McKenzie LLP ("Baker") legal team who had represented Petitioners and their employer in an investigation involving alleged corruption in Brazil, had written a lengthy unprivileged memorandum, in connection with her recent resignation from Baker, describing misconduct by Baker attorneys in the firm's representation of Petitioners.  Baker's conduct is directly at issue in the Brazilian Proceedings, and this newly revealed evidence is potentially critical to Petitioners' defense. With their liberty at stake, Petitioners have filed this Section 1782 Application seeking limited and targeted discovery—the memorandum and a deposition of its author, Ms. Meyer—to ensure that this potentially critical evidence is available for use in the Brazilian Proceedings.

---

[1]   The Subpoenas are attached as Exhibit 2 to the Declaration of Jared W. Newton dated February 25, 2019 ("Newton Decl.").

Baker was originally retained in 2017 by Petitioners' employer, J&F Investimentos S.A. ("J&F"), a Brazilian meat and poultry producer.  Baker worked with its closely affiliated sister firm in Brazil, Trench, Rossi e Watanabe Advogados ("Trench Rossi," and together with Baker, "J&F Legal Team"), to represent J&F in connection with investigations being pursued by authorities in each country into alleged bribery of Brazilian officials.  In connection with that investigation, the Brazilian Attorney General ("Brazilian AG") entered into cooperation agreements with each Petitioner ("Cooperation Agreements") and into a "leniency agreement" with J&F, guaranteeing that they would not face prosecution in exchange for the payment of fines and their cooperation.

The Cooperation Agreements are now at risk because of unethical conduct by Baker and Trench Rossi.  On September 14, 2017, Brazilian authorities instituted proceedings in the Federal Supreme Court of Brazil seeking to rescind the Cooperation Agreements based primarily on the allegedly improper involvement of a senior prosecutor in Brazil's Federal Prosecution Service ("MPF"), Marcello Miller, whom Baker and Trench Rossi hired to become a Trench Rossi partner and participate in the team negotiating the agreements.  Baker and Trench Rossi began having Mr. Miller participate in the representation, working alongside attorneys from Baker and Trench Rossi, *before* he left his position with the MPF.  Brazilian authorities have identified this conflict of interest as the primary grounds for their petition to withdraw Petitioners' Cooperation Agreements.

As part of their defense in the Brazilian Proceedings, Petitioners contend that they were unaware of Mr. Miller's continued position with the MPF, let alone the impropriety of that ongoing association.  Indeed, Baker and Trench Rossi provided no indication that they had failed to take appropriate measures to ensure that Mr. Miller's participation as counsel to J&F would

2

not be deemed improper and would not otherwise jeopardize J&F's and Petitioners' interests. Petitioners trusted outside counsel (Baker and Trench Rossi) to ensure that the J&F investigation and negotiations with MPF were properly handled in accordance with applicable law. Baker and Trench Rossi violated that trust by including Mr. Miller in the J&F Legal Team, and—as Petitioners have argued before the Federal Supreme Court of Brazil—they should not be punished for their counsel's misconduct, and their Cooperation Agreements should remain intact. The Brazilian Proceedings are currently pending, and a decision is expected as early as April 2019.

In the midst of this legal battle in Brazil, Petitioners' counsel was approached last week by an individual, who identified himself as a Baker partner, claiming to have information regarding misconduct by Baker in the firm's representation of Petitioners. Specifically, this whistleblower arrived unannounced at Petitioners' undersigned counsel's offices on February 19, 2019, refusing to give his real name or to leave until he met with Petitioners' counsel. The whistleblower then advised that Respondent, Ms. Meyer, had resigned from Baker on February 1, 2019 and in conjunction with her departure, had written a 27-page memorandum detailing Baker's misconduct relating to Mr. Miller. According to the whistleblower, that memorandum describes conduct consistent with claims for gross negligence and malpractice brought by J&F against Baker and Trench Rossi in litigation pending in the Superior Court of the District of Columbia. The claims against Baker and Trench Rossi in that litigation mirror the defenses Petitioners assert in the Brazilian Proceedings that the fault for bringing on Mr. Miller lies solely with their then-outside counsel. The whistleblower then attempted to show counsel a document—possibly that very memorandum—that he said he believed was not privileged.

Counsel nevertheless refused to look at or take the document and concluded the meeting soon thereafter.[2]  The entire exchange lasted less than five minutes.

Petitioners have now brought the present Application to ensure that they can obtain—through appropriate court process—Ms. Meyer's memorandum and testimony for use in the Brazilian Proceedings.  It is highly likely that the memorandum and testimony from Ms. Meyer support Petitioners' defenses in the Brazilian Proceedings, and, if made available for use in those proceedings, will substantially increase the likelihood that the Federal Supreme Court of Brazil will enforce Petitioners' Cooperation Agreements, thus shielding them from possible prosecution and imprisonment.  Indeed, given that the Respondent is Petitioners' and their employer's former counsel, the Application seeks no more than what rightfully belongs to Petitioners and their employer in the first place:  information about *their own representation* rendered by *their own counsel*.

Petitioners' Application meets all of the requirements of Section 1782.  The Respondent "resides" in this district.  The discovery sought by Petitioners is highly relevant to issues at stake in the Brazilian Proceedings.  Moreover, each of the discretionary factors laid down by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–56 (2004) favors granting the discovery sought by Petitioners.  Accordingly, the Petitioners respectfully

---

[2]  Petitioners' counsel only declined to engage Mr. GuSang regarding the contents of Ms. Meyer's memorandum as a precaution.  Petitioners are entitled to the memorandum, as it contains information relating to Baker and Trench Rossi's *representation of Petitioners* and their employer. *See, e.g.*, Va. R. Prof'l Conduct 1.4(a) ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."), (b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.").  Moreover, there is no risk that the memorandum is privileged.  It does not fall within the scope of attorney-client communication because it was not sent to Baker's counsel, but rather circulated to (many) other members of the firm. *In re El-Atari*, No. 09-14950-BFK, 2013 WL 593705, at *7 (Bankr. E.D. Va. Feb. 14, 2013)(finding that email correspondence between employees, and not with counsel, was not privileged).  Nor is it attorney work product, since it was not created in anticipation of litigation. *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 257 (E.D. Va. 2012), *enforcement granted in part, denied in part*, No. 3:09CV620, 2012 WL 6562735 (Dec. 14, 2012) ("The record shows that the documents at issue here were not "prepared in anticipation of litigation." . . . On this record, [defendant] has not established that the work of the lawyers was in anticipation of litigation even though it was done during litigation.").

4

request that the Court grant Petitioners' Application and permit Petitioners to serve the Subpoenas on the Respondent.

## I.   FACTUAL BACKGROUND

### A.   The Parties

***Joesley Batista.***  Petitioner Joesley Batista is a Brazilian national, residing and domiciled in Brazil.  He is the youngest of three brothers who worked at the business founded by his father José Batista Sobrinho in 1957.  Joesley Batista worked in some capacity at the family's business since 1988.  In 2017, he resigned from the position of CEO and Chairman of the family's holding company, J&F (among other positions in certain affiliates), and entered into a cooperation agreement with the Brazilian AG.[3]

***Wesley Batista***.  Petitioner Wesley Batista is a Brazilian national, residing and domiciled in Brazil.  He also worked at the family's business in some capacity since 1988.  In 2017, he resigned from the position of CEO of the family's meat processing company JBS S.A. (among other positions in certain affiliates), and entered into a cooperation agreement with the Brazilian AG.[4]

***Francisco de Assis.***  Petitioner Francisco de Assis e Silva is a Brazilian national, residing and domiciled in Brazil.  He was Legal Director of J&F and Executive Director of Institutional Relations for JBS S.A. until 2017.  Due to the investigations of senior management of the group, he resigned and also entered into a cooperation agreement with the Brazilian AG.[5]

***Ricardo Saud.***  Petitioner Ricardo Saud is a Brazilian national, resident and domiciled in Brazil.  He pursued a career in government relations and worked as J&F's Institutional Relations

---

[3]  Lóssio Decl. ¶ 13.
[4]  Lóssio Decl. ¶ 14.
[5]  Lóssio Decl. ¶ 15.

and Government Director until 2017, when he resigned and entered into a cooperation agreement with the Brazilian AG.[6]

**_Joan Meyer._**  Respondent Joan Meyer is a former partner at Baker in Washington, D.C. On February 1, 2019, she resigned from Baker.  She has since joined Pierce Bainbridge Beck Price & Hecht LLP as a partner.  Whilst at Baker, Ms. Meyer and another partner supervised Baker's work in close collaboration with its affiliate firm in Brazil, Trench Rossi, when the two firms represented J&F in connection with criminal and regulatory investigations pursued by authorities in Brazil and in the United States.[7]  Ms. Meyer resides in Alexandria, Virginia.[8]

### B.    Investigations in Brazil and the United States

Since at least 2016, J&F and certain of its affiliates have become the subject of investigations in both Brazil and the United States.[9]  Due to J&F's headquarters in Brazil and significant business presence in the United States, J&F had to face separate investigations by Brazilian and U.S. authorities in connection with certain political matters in Brazil.[10]  In order to cope with these cross-border investigations, J&F hired Baker and its affiliate firm in Brazil, Trench Rossi, for the task.  Ms. Meyer was among the Baker partners in charge of the J&F matter.[11]

### C.    Backer McKenzie and Trench Rossi Hire Marcello Miller

In early 2017, the same period in which they started to represent J&F, Baker and Trench Rossi approved the hiring of a senior prosecutor in Brazil's Federal Prosecution Service, Marcello Paranhos Miller, to become a partner at Trench Rossi.[12]  As an MPF prosecutor, Mr.

---

[6]  Lóssio Decl. ¶ 16.
[7]  Lóssio Decl. ¶ 17.
[8]  Newton Decl., Exs. 3-5.
[9]  Lóssio Decl. ¶ 18.
[10]  Lóssio Decl. ¶ 18.
[11]  Lóssio Decl. ¶ 19.
[12]  Lóssio Decl. ¶ 20.

Miller was involved in corruption prosecutions.[13]   On or about February 23, 2017, Mr. Miller delivered a resignation letter to MPF, but remained in his position with MPF until on or about April 5, 2017.[14]

While he was still officially a prosecutor with MPF, Baker and Trench Rossi staffed Mr. Miller to participate as a member of the legal team representing J&F, working alongside attorneys, including Respondent, from Trench Rossi's office in São Paulo and Baker's office in Washington, D.C.[15]

Throughout March 2017, J&F, through its officers, met regularly with attorneys from Baker to discuss strategy surrounding negotiations with authorities in Brazil and the United States, and to plan for J&F's overall legal strategy.[16]   Mr. Miller acted as a member of the J&F Legal Team in a number of those meetings, though Baker and Trench Rossi knew or should have known that he had not yet left his position as a prosecutor with the MPF, and thus should not have been participating.[17]

The Respondent has had significant interactions with Mr. Miller.[18]   For example, on April 6, 2017—a day after Mr. Miller left MPF—the Respondent, together with Mr. Miller and others at Baker and Trench Rossi, delivered a presentation to DOJ officials in Washington D.C relating to investigations into the company.[19]

---

[13]  Lóssio Decl. ¶ 20.
[14]  Lóssio Decl. ¶ 20.
[15]  Lóssio Decl. ¶ 21.
[16]  Lóssio Decl. ¶ 22.
[17]  Lóssio Decl. ¶ 22.
[18]  Lóssio Decl. ¶ 23.
[19]  Lóssio Decl. ¶ 23.

### D.      The Cooperation Agreements

On May 3, 2017, Petitioners agreed to resolve potential criminal charges by entering into the Cooperation Agreements with the Brazilian Attorney General ("Brazilian AG").[20]  Under the Cooperation Agreements, Petitioners agreed to provide full cooperation with Brazilian authorities in ongoing criminal investigations and to pay fines in exchange for non-prosecution.[21]

As required under Brazilian law, on May 8, 2017, the Brazilian AG filed a petition with the Federal Supreme Court of Brazil to ask for approval—or "homologation"—of the Cooperation Agreements.[22]  Two months later, on June 5, 2017, J&F announced a "leniency agreement" with Brazilian authorities pursuant to which it agreed to pay approximately 10.3 billion Brazilian Reals (approximately US$ 3.18 billion), and to cooperate in the ongoing anti-corruption investigations.[23]

### E.      The Proceedings Before the Federal Supreme Court of Brazil

On September 5, 2017, the Brazilian AG filed a brief in the Federal Supreme Court of Brazil stating that it suspected that Mr. Miller committed a crime by acting on behalf of Petitioners Joesley Batista and Ricardo Saud before leaving his position at MPF.[24]  The Brazilian AG subsequently opened an investigation into the matter.  On September 14, 2017, the Brazilian AG filed a motion stating that MPF decided to terminate Petitioners Joesley Batista's and Ricardo Saud's Cooperation Agreements and requested that the Federal Supreme Court of Brazil homologate, i.e. approve, the termination.[25]

---

[20]  Lóssio Decl. ¶ 24.
[21] Lóssio Decl. ¶ 24. The Brazilian AG became involved because some of the alleged crimes under investigation involved improper payments to Brazilian authorities, including the former President of the Federative Republic of Brazil and a Brazilian Senator. Lóssio Decl. ¶ 25.
[22]  Lóssio Decl. ¶ 26.
[23]  Lóssio Decl. ¶ 26.
[24]  Lóssio Decl. ¶ 30.
[25]  Lóssio Decl. ¶ 31.

The Brazilian AG's core claims in the Brazilian Proceedings include, inter alia, that Joesley Batista and Ricardo Saud concealed from Brazilian authorities Mr. Miller's unlawful involvement in the J&F Legal Team, including alleged attempts to unlawfully influence and obstruct the investigations into J&F and its affiliates.  The Brazilian AG also alleged that Joesley Batista and Ricardo Saud failed to disclose that they aided Mr. Miller in concealing and manipulating evidence relevant to the investigation, all while Mr. Miller continued his employment with MPF.[26]

On February 26, 2018, the Brazilian AG filed a motion in the Brazilian Proceedings to terminate Petitioners Wesley Batista's and Francisco de Assis' Cooperation Agreements.[27]  In this motion, the Brazilian AG claimed, inter alia, that Wesley Batista's phone contained a group chat on WhatsApp (a messaging mobile application) created on March 31, 2017 in which Mr. Miller provided advice to Ricardo Saud, Francisco de Assis and others at the J&F group before Mr. Miller left MPF, and that Mr. Miller billed such advice through Trench Rossi.[28]

In response to the Brazilian AG's motions, Petitioners contend that they did not know that Mr. Miller was still an MPF prosecutor at the time of his involvement in the J&F Legal Team and that circumstances at the time led Petitioners to believe that Mr. Miller had transitioned to private practice at Trench Rossi in accordance with all laws and ethical codes.[29]  For instance, Petitioner Francisco Assis testified to the Federal Supreme Court of Brazil that Mr. Miller was a referral from external counsel and that, when he met Mr. Miller in February 2017, Mr. Miller stated that he had already resigned and was now a lawyer in private practice.[30]

---

[26]  Lóssio Decl. ¶ 32.

[27]  Lóssio Decl. ¶ 33.

[28]  Lóssio Decl. ¶ 33.  As a result of the Brazilian AG's actions to rescind the Cooperation Agreements, J&F sued Baker and Trench Rossi in this Circuit for, inter alia, gross negligence and malpractice. *See* Complaint, *J&F Investimentos S.A. v. Baker & McKenzie LLP*, 2018 CA 002569 M (D.C. Super. Ct. Sept. 10, 2018).

[29]  Lóssio Decl. ¶ 34.

[30]  Lóssio Decl. ¶ 34.

Similarly, Petitioner Joesley Batista testified to the Federal Supreme Court of Brazil that Mr. Miller told him that there was no quarantine period for MPF prosecutors and that his resignation was irrevocable; thus, according to what Mr. Miller said to Petitioner Joesley Batista, the conversation they were having was legal and proper.[31]

According to Petitioners, they believed they were dealing with a Trench Rossi lawyer when they encountered Mr. Miller, not an MPF prosecutor.[32]   In essence, Petitioners trusted outside counsel (Baker and Trench Rossi) to ensure that the investigation was properly handled for J&F in accordance with applicable law.[33]   Instead, Baker and Trench Rossi inexplicably decided to include Mr. Miller in J&F Legal Team while he remained an MPF prosecutor thereby directly putting Petitioners' Cooperation Agreements in jeopardy.[34]

As things stand in Brazil, Baker and Trench Rossi have not accepted their role and responsibility in hiring and staffing Mr. Miller to J&F's case.[35]   Any evidence about Baker and Trench Rossi's failure to exercise proper care in staffing Mr. Miller in the J&F Legal Team, and their subsequent failure to advise J&F and Petitioners as to the impropriety of his involvement in the J&F Team, would directly support Petitioners' defense in the Brazilian Proceedings that they were not involved in any decision to hire, staff, or use Mr. Miller as part of the J&F Legal Team's work.[36]

It is therefore imperative that Petitioners obtain information and testimony from Ms. Meyer.   Indeed, Ms. Meyer's resignation memorandum may prove to be a turning point in the Brazilian Proceedings, effectively discrediting any allegations that Petitioners had any improper

---

[31]  Lóssio Decl. ¶ 34.
[32]  Lóssio Decl. ¶ 35.
[33]  Lóssio Decl. ¶ 35.
[34]  Lóssio Decl. ¶ 35.
[35]  Lóssio Decl. ¶ 36.
[36]  Lóssio Decl. ¶ 36.

contacts with Mr. Miller, when in fact Petitioners simply treated Mr. Miller as a private practice lawyer affiliated with the law firms—Baker and Trench Rossi—that hired and staffed him on the case.

There has been substantial discovery before the Federal Supreme Court of Brazil in the Brazilian Proceedings, including documents and testimony.[37]  While the official discovery phase of the proceeding has concluded, parties are permitted to submit any new evidence to the Federal Supreme Court of Brazil until the court rules on the case.[38]

> **F.  The Whistleblower Reaches Out to Petitioners About Respondent and Respondent's Memorandum**

At approximately 11:30 AM on February 19, 2019, a whistleblower, identifying himself only as "Mr. GuSang," arrived unannounced at the Washington, D.C. office of undersigned counsel, who currently represent J&F, JBS, S.A., and Petitioners in various criminal and civil matters.[39]  One such matter is a civil malpractice suit brought by J&F against Baker and Trench Rossi in the Superior Court of the District of Columbia (the "D.C. Litigation"), relating to Baker's and Trench Rossi's gross negligence and malpractice regarding Mr. Miller.[40]  Upon entering the office, Mr. GuSang demanded to see partner Eric C. Lyttle, who is counsel for J&F in the D.C. Litigation, and refused to leave until he did.[41]  Mr. GuSang went on to reveal that he was a partner with Baker's Chicago office.  He declined, however, to reveal his actual name.[42]

Mr. Lyttle and another partner, Ben O'Neil, counsel for J&F and JBS, S.A., met with Mr. GuSang shortly thereafter.[43]  Upon meeting Mr. GuSang, Mr. Lyttle and Mr. O'Neil immediately

---

[37]  Lóssio Decl. ¶ 38.
[38]  Lóssio Decl. ¶ 38.
[39]  Lyttle Decl. ¶ 4.
[40]  Lyttle Decl. ¶ 2, n.1.
[41]  Lyttle Decl. ¶ 4.
[42]  Lyttle Decl. ¶ 4.
[43]  Lyttle Decl. ¶ 5.

indicated that Mr. GuSang should not reveal any privileged information.[44]  Mr. GuSang placed a document on the table in front of Mr. Lyttle and Mr. O'Neil, and indicated he did not believe it was privileged; however, Mr. Lyttle and Mr. O'Neil declined to accept or review the document.[45]

Mr. GuSang then asked if Mr. Lyttle and Mr. O'Neil were aware that the Respondent had resigned from her role at Baker on February 1, 2019.[46]  He went on to explain that the Respondent wrote a 27-page memorandum regarding her departure, which she then sent to Baker's management committee and over 50 additional lawyers within the firm.[47]  According to Mr. GuSang, this memorandum contained non-privileged information supporting the allegations against Baker and Trench Rossi in the D.C. Litigation.[48]  Mr. GuSang then departed the office, again refusing to provide his real name.[49]  The meeting lasted less than five minutes.[50]

In light of the foregoing, it is highly likely that Respondent possesses information that may be critical to Petitioners' case, as it may demonstrate that it was Baker's and Trench Rossi's conduct, not Petitioners', that resulted in Mr. Miller's involvement in Petitioners' case.  As such, Petitioners respectfully seek documents and testimony from her to restore their Cooperation Agreements and secure their liberty.

## II.    ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a foreign proceeding.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for

---

[44] Lyttle Decl. ¶ 6.
[45] Lyttle Decl. ¶ 7.
[46] Lyttle Decl. ¶ 9.
[47] Lyttle Decl. ¶ 9.
[48] Lyttle Decl. ¶ 10.
[49] Lyttle Decl. ¶ 11.
[50] Lyttle Decl. ¶ 11.

> use in a proceeding in a foreign or international tribunal . . . .   The order may be
> made . . . upon the application of any interested person.

28 U.S.C. § 1782.

Courts are permitted to grant Section 1782 applications on an ex parte basis.   *In re Rivada Networks*, 230 F. Supp. 3d 467, 473 (E.D. Va. 2017) (concluding that "decision to file an ex parte § 1782 application was proper . . . as § 1782 applications are routinely filed ex parte"); *see In re Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F. Supp. 3d 269, 272 (D.D.C. 2018) ("[D]istrict courts are generally authorized to review a § 1782 application on an *ex parte* basis."); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Société d'Etude de Réalisation et d'Exploitation Pour le Traitement du Mais*, No. 13-MC-0266, 2013 WL 6164435, at *2 n.1 (E.D. Pa. Nov. 22, 2013) (collecting cases).   "[A]s a general matter, *ex parte* review is 'justified by the fact that the parties [from whom discovery is sought] will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'"   *In re Masters*, 315 F. Supp. 3d at 272 (quoting *In re Letter of Request from Supreme Court of H.K.*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991)).

An application made pursuant to Section 1782 must satisfy three statutory requirements: (1) the person from whom discovery is sought must reside in or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person.   *See In re Nat'l Syndicate for Elec. Energy*, No. 1:13-MC-20 GBL/TCB, 2014 WL 130973, at *2 (E.D. Va. Jan. 14, 2014); *In re DiGiulian*, 314 F. Supp. 3d 1, 6 (D.D.C. 2018).

13

After determining that the three statutory requirements are satisfied, courts may then consider four discretionary factors in deciding whether to grant a Section 1782 application, namely: (i) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264–65. The Supreme Court neither mandated that lower courts weigh those factors, nor "articulate[d] a formula for their consideration." *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 17-1466 (BAH), 2017 WL 3708028, at *3 (D.D.C. Aug. 18, 2017); *see also HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 222 (D.D.C. 2015).

Moreover, the Court should consider these discretionary factors in light of the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000) (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)); *see In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech*, 748 F. Supp. 2d 522, 525 (E.D. Va. 2010); *Intel*, 542 U.S. at 252. The Supreme Court and courts in other circuits have acknowledged a congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g.*, *Intel*, 542 U.S. at 247–48; *Al Fayed v. C.I.A.*, 229 F.3d 272, 276 (D.C. Cir. 2000) (acknowledging that "successive amendments, since the statute's origin in 1855, have

14

given [Section 1782] 'increasingly broad applicability.'" (citing *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996))); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given 'increasingly broad applicability." (quoting *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993))).

### B.    Petitioners Satisfy the Three Statutory Requirements of 28 U.S.C. § 1782.

Petitioners satisfy the three statutory requirements of Section 1782: (1) Respondent resides and is "found" in the Eastern District of Virginia; (2) the requested information is "for use" in the Brazilian Proceedings; and (3) Petitioners are "interested persons" as the defendants in that foreign proceeding.

### 1.    Respondent Is "Found" in the Eastern District of Virginia.

As a resident of Alexandria, Virginia, Respondent "resides" and is "found" in this district for purposes of Section 1782.[51] *In re Svitavy*, 748 F. Supp. 2d at 525 (granting application where respondent "resides" within the Eastern District of Virginia).  Indeed, this standard is more easily met here where Respondent is a natural person and need only be physically present in Virginia upon being served with the subpoena.  *See, e.g.*, *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("[I]f a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district.").

### 2.    The Discovery Sought Is for Use in Foreign Proceedings.

The Brazil Proceedings qualify as adjudicative proceedings "in a foreign or international tribunal" for purposes of Section 1782 because, as a court of original jurisdiction, the Federal Supreme Court of Brazil exhibits all the hallmarks of traditional judicial proceedings by acting as a first-instance decision-maker tasked with resolving evidentiary disputes, collecting and reviewing evidence in order to resolve those disputes, and permitting certain of its decisions to

---

[51]   Newton Decl. ¶ 5 & Exs. 3-5.

be appealed and become subject to further review. *Intel*, 542 U.S. at 257, 259; Lóssio Decl. ¶ 27. The Federal Supreme Court of Brazil is currently adjudicating over claims to potentially deprive Petitioners of their liberty. Additionally, and since the evidence could effectively preclude any criminal prosecution of the Petitioners, it is well-established that "[Section] 1782 extends to the request for judicial assistance in a pending criminal prosecution against an individual." *In re Sumar*, 123 F.R.D. 467, 470 (S.D.N.Y. 1988); *In re Request for Int'l Judicial Assistance (Letter Rogatory) from the Federative Republic of Brazil*, 687 F. Supp. 880, 886 (S.D.N.Y. 1988) (finding ongoing prosecutorial investigation in Brazil to be a "foreign proceeding" for purposes of Section 1782).

Petitioners are not required to show that the information sought would be discoverable or admissible in the Brazilian Proceedings. *Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *In re Svitavy*, 748 F. Supp. 2d at 527 ("To delve into the merits of litigation pending before a foreign tribunal would be a breach of international comity. Indeed, the Supreme Court has instructed that the district courts are to refrain from delving into the similarly technical question of discoverability under foreign laws in considering a § 1782 request for judicial assistance."); *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 11 (D.D.C. 2017) ("[S]ection 1782 does not require that the material sought in the United States be discoverable—or even admissible—in the foreign tribunals."). Rather, the burden on Petitioners is "*de minimis*"; Petitioners need only show that the evidence is relevant to the Brazilian Proceedings. *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (granting application where petitioners made "*prima facie* showing and its conclusion that the discovery sought in fact relates to claims and defenses").

Here, Petitioners plainly satisfy this requirement.   The information sought in the Subpoenas is highly material to the Brazilian Proceedings because it relates to, among other things, (i) the facts and circumstances surrounding Mr. Miller's employment and participation in the J&F Legal Team; and (ii) Baker's hiring and staffing procedures, including any decision-making processes involved in the hiring and staffing of Mr. Miller—issues that are central to Petitioners' defenses in the Brazilian Proceedings. *See supra* Section I.E. at 8-11.

Petitioners will be able to introduce evidence obtained via this Application at any time before the Federal Supreme Court of Brazil rules on the case, which is estimated to occur as soon as April 2019.[52]

### 3.    Petitioners Are "Interested Persons."

Finally, Section 1782 requires persons seeking discovery to show that they possess a sufficient interest in the foreign proceedings.   While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, there is "[n]o doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782." *Intel*, 542 U.S. at 256; *Oncology Found. v. Avanza Dev. Servs., LLC*, No. CV PX 17-1445, 2017 WL 2376769, at *1 (D. Md. May 30, 2017) (holding that "a party to the [foreign] litigation" is an "interested person"); *In re Veiga*, 746 F. Supp. 2d at 17 ("Applicants are all 'interested persons' within the meaning of § 1782(a) as litigants in the proceedings at issue."). Petitioners are defendants in (and thus parties to) the Brazilian Proceedings.   As such, Petitioners are plainly "interested person[s]" under Section 1782.

---

[52]   Lóssio Decl. ¶ 8.

**C. All of the Discretionary Factors Under Section 1782 Weigh in Favor of Permitting the Discovery Petitioners Seek.**

Once the threshold requirements under Section 1782 are met, the Court considers the four discretionary "*Intel* factors." Each of these factors weighs in favor of granting the requested discovery here. *First*, Respondent is not a party to the Brazilian Proceedings. *Second*, there is no reason to believe that the Brazilian Proceedings would be unreceptive to evidence obtained through Section 1782 discovery, and indeed, the discovery sought is directly relevant to those proceedings. *Third*, Petitioners are acting in good faith and are not seeking to avoid any foreign restriction on gathering evidence. *Fourth*, the requests are carefully circumscribed to avoid any undue burden.

**1. The First *Intel* Factor Favors Granting Discovery.**

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264; *In re DiGiulian*, 314 F. Supp. 3d at 7 (finding that non-participant in foreign proceeding is beyond the jurisdiction of the foreign tribunal as the third-party lacks "'legal authority to command [respondent's] attendance[,] his production of documents,' or his testimony" (second alteration in original)); *In re Svitavy*, 748 F. Supp. 2d at 526 (concluding that first *Intel* factor weighed in favor of granting the application where foreign proceeding was unable to compel respondent to respond to its discovery requests absent Section 1782 aid).

Here, Respondent is not a party to the Brazilian Proceedings. The Brazilian Proceedings seek to rescind the Cooperation Agreements between the Brazilian authorities and Petitioners; as such, only Petitioners can be the proper defendants. Respondent, however, is a non-participant

18

in the Brazilian Proceedings and beyond the jurisdiction of the Federal Supreme Court of Brazil. Accordingly, the Federal Supreme Court of Brazil cannot compel Respondent to produce documents or testimony.

### 2.  The Second *Intel* Factor Favors Granting Discovery.

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782.  A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782."  *In re DiGiulian*, 314 F. Supp. 3d at 8 (noting that "it is not necessary to conduct an 'extensive examination of foreign law regarding the existence and extent of discover[y] in the forum country'"(quoting *In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 105-06 (D.D.C. 2010))).  "[A] respondent must demonstrate a 'clear directive' or 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782,' such as "'judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures.'" *In re Chevron Corp.*, No. 7:10-mc-00067, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010) (second alteration in original) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).  Here, the Federal Supreme Court of Brazil, as a court of original jurisdiction, will be receptive to evidence obtained as a result of this Application.[53]  In the Brazilian Proceedings, Petitioners will have the opportunity to present evidence at any time before the court rules on the case.[54]

Further, courts have determined that the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from the existence of treaties that facilitate cooperation

---

[53]  Lóssio Decl. ¶ 51.
[54]  Lóssio Decl. ¶ 52.

between the U.S. federal judiciary and the foreign jurisdiction.  *See In re Imanagement Servs. Ltd.*, No. Civ.A. 05-2311(JAG), 2006 WL 547949, at *4 (D.N.J. Mar. 3, 2006) (stating that foreign jurisdiction "has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation"); *In re Servicio Pan Americano de Proteccion*, *C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (same).  Brazil has entered into such treaties with the United States.[55]

### 3.     The Third *Intel* Factor Favors Granting Discovery.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires the evidence be discoverable in the foreign proceeding itself, and other district courts have added that an applicant need not show the specific documents or testimony sought would be admissible abroad.  *Intel*, 542 U.S. at 260; *In re Veiga*, 746 F. Supp. 2d at 17–18 ("[D]istrict courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding.").  Nor is a Section 1782 applicant required to first exhaust its remedies in the foreign court.  *See In re DiGiulian*, 314 F. Supp. 3d at 8–9 ("[L]itigants are not required to seek discovery through the foreign tribunal prior to requesting through the United States." (citation omitted)); *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement,' finds no support in the plain language of [Section 1782] and runs counter to its express purposes.").  The issue is solely whether the discovery is being sought in bad faith.  *See In re Chevron Corp.*, 2010 WL 4883111, at *3.

---

[55]  *See, e.g.*, Treaty on Mutual Legal Assistance in Criminal Matters, U.S.-Braz., Feb. 21, 2001, T.I.A.S. No. 12,889; Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, U.N.T.S. 12,140 (also known as the Hague Evidence Convention) (United States and Brazil have both signed the convention).

Here, there is no reason to believe that any of the discovery sought violates public policy or that the request is being sought in bad faith.  Petitioners do not seek customer account information, state secrets, or attorney-client communications—they merely seek documents and communications that are in the possession of a private party regarding events that can potentially have a catastrophic impact on their liberty.  Brazil does not have any law or public policy against such discovery.[56]  Moreover, if Respondent reasonably believes that any responsive documents present such concerns, Petitioners are prepared to consider mechanisms for accommodating them, including a protective order.  *See, e.g.*, *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, Civ. No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits [a] Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed."); *Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005) (granting modification of protective order allowing Section 1782 applicant to use discovery in related proceedings).

### 4.     The Fourth *Intel* Factor Favors Granting Discovery.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  *In re Veiga*, 746 F. Supp. 2d at 19 ("[T]he standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a).").  This inquiry encompasses "the relevance of the requested discovery to the foreign proceeding." *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2017 WL 3708028, at *4 (citing *In re Veiga*, 746 F. Supp. 2d at 19).  Relevancy in this context "is broadly construed

---

[56]   Lóssio Decl ¶ 50.

and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000). "When relevance is in doubt, the district court should be permissive." *In re Veiga*, 746 F. Supp. 2d at 19.

Here, the requests in the Subpoenas are narrowly tailored, temporally limited, and directly relevant to questions at issue in the Brazilian Proceedings. Specifically, the discovery sought by Petitioners—which is being sought from its former counsel—is relevant and highly material to proving Petitioners' lack of knowledge of the impropriety of Mr. Miller's involvement in the J&F Legal Team, which could lead to the preservation of the Cooperation Agreements and ultimately secure Petitioners' liberty. Further, the Application seeks no more than what rightfully belongs to Petitioners and their employer in the first place: information about their own representation, rendered by their own counsel.[57] Whatever burden Respondent may incur by producing the requested discovery, it is both modest and proportionate given the circumstances.

## III.   CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court (a) grant the *Ex Parte* Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Newton Declaration as Exhibit 1; (c) authorize Petitioners, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas upon Respondent; and (d) grant any and all other relief to Petitioners as is deemed just and proper.

---

[57] *See supra* note 2.

Dated:  February 25, 2019

Respectfully submitted,

/s/ *Jared W. Newton*

Jared W. Newton (Virginia Bar No. 80746)
William A. Burck (*pro hac vice* forthcoming)
Eric C. Lyttle (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Suite 900
Washington, D.C. 20005
(T): 202-538-8000
(F): 202-538-8100
jarednewton@quinnemanuel.com
williamburck@quinnemanuel.com
ericlyttle@quinnemanuel.com

Adam M. Abensohn (*pro hac vice* forthcoming)
Lucas V.M. Bento (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
adamabensohn@quinnemanuel.com
lucasbento@quinnemanuel.com

*Attorneys for Petitioners*