IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE APPLICATION OF JOESLEY MANDONCA BATISTA, WESLEY MENDONCA BATISTA, FRANCISCO DE ASSIS E SILVA, AND RICARDO SAUD FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:19-mc-00004-TSE-IDD |

**BAKER & MCKENZIE LLP'S [PROPOSED] MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' *EX PARTE* EMERGENCY APPLICATION AND PETITION FOR AN ORDER TO CONDUCT EXPEDITED DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................................1

II. ARGUMENT.................................................................................................................................3

    A. Ms. Meyer Cannot Provide the Evidence Petitioners Claim to Seek. ...................................4

    B. Even Were Ms. Meyer a Competent Witness to Testify About Events that Pre-Date Her Involvement, the Petition Should be Denied for Other Reasons. ...................................................................................................................5

        1. Petitioners Fail to Show that Ms. Meyer's Testimony Would be Material to the Brazilian Court's Determination. ..................................................5

        2. Any Testimony on Matters Outsider Ms. Meyer's Personal Knowledge Would be Inextricably Infected by Her Extensive Exposure to Baker McKenzie's Privileged Information.........................................6

        3. Petitioners Appear to Be Impermissibly Using Section 1782 to Circumvent the Purview of the Superior Court of Washington, D.C. ...........................................................................................................................9

    C. In Addition to Invading Baker McKenzie's Privilege, Petitioners' Document Requests are Fatally Overbroad. ...........................................................10

III. CONCLUSION............................................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Glock v. Glock*, 797 F.3d 1001, 1009 (11th Cir. 2015) ..................................................................4

*Hulley Enters. v. Baker Botts, LLP*, No. 17-466, 2017 U.S. Dist. LEXIS 142969
    (D.D.C. Aug. 18, 2017) ..................................................................................................7, 8

*In re Macquarie Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 WL 3439103
    (D. Nev. May 28, 2015) ......................................................................................................10

*In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006) ........................................................7

*In re OOO Promnefstroy*, Misc. No. 19-99, 2009 WL 3335608
    (S.D.N.Y. Oct. 15, 2009) ....................................................................................................10

*In re Qualcomm Inc.*, 162 F. Supp. 3d 1029 (N.D. Cal. 2016) ....................................................10

*In re Request for Judicial Assistance*, 748 F. Supp. 2d 522 (E.D. Va. 2010) ...........................3, 4

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..........................................4, 7

*James Madison Project v. CIA*, No. 1:08CV1323 (GBL), 2009 WL 2777961
    (E.D. Va. Aug. 31, 2009) ....................................................................................................10

## STATE CASES

*J&F Investimentos S.A. v. Trench, Rossi e Watanabe Advogados and Baker &
    McKenzie LLP*, No. 2018 CA 002569 M (D.C. Super.) ......................................................1

## STATUTES

28 U.S.C. § 1782 ............................................................................................................................7

I.  INTRODUCTION

Petitioners filed an *Ex Parte* Emergency Application to conduct discovery pursuant to 28 U.S.C. § 1782 of a former Baker & McKenzie LLP ("Baker McKenzie") partner, Joan Meyer. The Court has considerable latitude in its consideration of Section 1782 applications, and we will not belabor unnecessarily the jurisprudence in the short time we have before the scheduled hearing. We submit that the Court should deny the petition in this case and allow the parties to present their arguments to the Superior Court in the District of Columbia, where the basic dispute has been pending for almost eleven months. *See J&F Investimentos S.A. v. Trench, Rossi e Watanabe Advogados and Baker & McKenzie LLP*, No. 2018 CA 002569 M (D.C. Super.).

In this case, a person who held himself out as a partner of a represented party allegedly offered the same Quinn Emanuel lawyers who are representing both Petitioners here as well as J&F Investimentos S.A.("J&F"), the plaintiff in the District of Columbia Superior Court action, "non-privileged information supporting the ***allegations against Baker and Trench Rossi in the D.C. Litigation.***"[1] Mem. at 12 (emphasis added). This evidence was purportedly relevant to establishing a civil case for negligence or malpractice—claims that are the crux of J&F's Superior Court complaint in the District of Columbia. *See* Complaint, *J&F Investimentos S.A. v. Trench, Rossi e Watanabe Advogados and Baker & McKenzie LLP*, No. 2018 CA 002569 M (D.C. Super.). Petitioners' counsel never should have met with a lawyer of a represented party, particularly given the overwhelming indicia that the visit was unauthorized and improper. By doing so, counsel risks disqualification. The obvious next step for Petitioners' counsel was to contact Baker McKenzie's counsel to determine whether the visit was authorized, or to apply to Judge Rigsby, who has been handling the District of Columbia Superior Court case and before

---

[1] Although Petitioners characterize this information as "non-privileged," their assertion is just that—an assertion—and has not been tested.

1

whom Petitioners' counsel has appeared on multiple occasions on behalf of J&F, for appropriate relief making whatever case they could to meet with this person or obtain access to the document.

Rather than doing so, Petitioners have manufactured an emergency where none exists. They gloss over the distinction between what the whistleblower said about the document and what they claim it will show. Moreover, they do so in a fashion that prevents a reasonable inquiry into whether the knowledge and belief of the four Petitioners is an issue on which the Federal Supreme Court of Brazil has said it will accept evidence (or whether they have even asked it to do so). What the Petitioners "knew" and what they "believed" cannot reasonably be equated with the "allegations against Baker and Trench Rossi in the D.C. Litigation," but that is precisely what Petitioners are attempting to do to secure this "emergency" "ex parte" relief.

The point is made even more forcefully when the Court considers the chronology of events in this case. The relevant knowledge and belief of Petitioners were presumably established when they dealt with Mr. Miller, in February and March 2017. *See* Declaration of Ryan Scarborough ¶ 17, ECF No. 13 & Ex. 3 at 13, 22, 27, and 31 ("Scarborough Decl."). Is there any allegation that Ms. Meyer was present or involved in any way with the interactions between Mr. Miller and the Petitioners in February or March 2017? No. Is there any allegation that Petitioners even met or spoke to Ms. Meyer during that time? No. In fact, Petitioners expressly note that Mr. Miller remained in his "position with MPF until on or about April 5, 2017," Mem. at 7, and that the first identified "interaction" between Mr. Miller and the Respondent (Ms. Meyer) occurred April 6, 2017, *id.* All of this is to highlight that this emergency *ex parte* Application is an elaborate tactic to rewrite the "whistleblower's" message from one that should be considered in Superior Court, where the existing controversy has been

pending for nearly one year, to an urgent matter that exposes Baker McKenzie to grave, irreparable risks of invasion of privilege and work product for no realistic purpose.

Finally, while we know that digging too deeply into the Brazilian pleadings is difficult given the time constraints, we urge the Court to consider one pleading in deciding whether Petitioners' effort to prove they did not "know" that Mr. Miller was still associated with the MPF and "believe[d]" his involvement on their behalf was appropriate is warranted. The Brazilian prosecutors filed a lawsuit in August 2018 in which they set forth some of the evidence they had collected from the Petitioners about their misconduct. The prosecutors' complaint, which is attached as Exhibit 3 to Mr. Scarborough's Declaration, meticulously details the documentary evidence proving Petitioners' orchestration of Mr. Miller's involvement. *See* Scarborough Decl. ¶ 17 & Ex. 3 at 13, 22, 27, and 31. It is difficult to equate this and the other evidence with the claim that Ms. Meyer can provide pivotal, or even relevant, evidence. It seems far more likely that they are seeking the evidence to achieve an unfair advantage in proving "the allegations against Baker and Trench Rossi in the D.C. Litigation," just as the whistleblower claimed.

## II.  ARGUMENT

"[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *In re Request for Judicial Assistance*, 748 F. Supp. 2d 522, 525 (E.D. Va. 2010) (alteration in original) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)). The court considers a Section 1782 application in light of the four discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.* Those factors include:

> (1) Whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid;
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

> government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign-proof gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Intel Corp.*, 542 U.S. at 264–65. In determining whether to grant a Section 1782 application, the district court "must exercise [its] discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . . .'" *In re Request for Judicial Assistance*, 748 F. Supp. 2d at 526 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)).

The decision to grant or deny a Section 1782 application, however, is always in the discretion of this Court, which can—and should—deny an application when there is evidence that the "applicant is attempting to use foreign litigation as a ruse for obtaining discovery in the United States without complying with the usual procedures of the Federal Rules of Civil Procedure." *Glock v. Glock*, 797 F.3d 1001, 1009 (11th Cir. 2015).

### A. Ms. Meyer Cannot Provide the Evidence Petitioners Claim to Seek.

Reduced to its essence, Petitioners allege they need Ms. Meyer's testimony to prove that when they retained Baker's "sister firm" TRW, they did not "know" nor did they "believe" that Mr. Miller was still a federal prosecutor. Notably absent from their filings is any affidavit that any of the four Petitioners met or spoke with Ms. Meyer at all before she first billed time to the J&F matter on April 3, 2017, or that subsequently they ever conveyed to her in any form their knowledge or belief of Mr. Miller's employment status, however acquired. Putting to one side the rather dubious proposition that Ms. Meyer could offer testimony on the state of knowledge or belief of another person, the undisputed facts here make plain that she was not even involved in

4

the matters during the relevant time period. Her first time entry on the matter is April 3, 2017, *see* Scarborough Decl. ¶ 13, which, according to the Petition is a month or more after Miller started dealing with Petitioners, *see id.* at ¶ 17 & Ex. 3 at 13.

This goes far beyond a question of competency; it is simple logic. When can a witness even be required to offer testimony about time periods before they were involved in the matters? Never, we submit, because she was not a percipient witness to those events. This is doubly true when the issue on which the testimony is allegedly sought is what four other individuals *knew* or *believed* when they engaged a so-called "sister firm" nearly five thousand miles away a month or two before the witness got involved. Because that is the sole justification for her deposition, the Court should exercise its discretion and deny it.

### B. Even Were Ms. Meyer a Competent Witness to Testify About Events that Pre-Date Her Involvement, the Petition Should be Denied for Other Reasons.

#### 1. Petitioners Fail to Show that Ms. Meyer's Testimony Would be Material to the Brazilian Court's Determination.

Further compounding the undue burden and intrusiveness of Petitioners' request is the fact that the discovery they seek from Ms. Meyer bears no relevance on the issue before the Brazilian Court—i.e., whether Petitioners violated the terms of the Collaboration Agreements. Contrary to the assertions made in their application, Petitioners' request for information about Ms. Meyer's interactions with Mr. Miller and any alleged knowledge of his hiring has nothing to do with the potential rescission of their Collaboration Agreements. Prosecutors have expressly asserted numerous additional serious grounds to rescind the Collaboration Agreements that go far beyond the circumstances of Mr. Miller's hiring and involvement. These violations include "omitting information on criminal acts committed by third parties," intentionally omitting existence of foreign bank accounts, failing to produce electronic devices containing evidence of criminal activity, and insider trading. Scarborough Decl., Ex. 3, 9–10.

The only support that Petitioners offer for their position that the Federal Supreme Court of Brazil would consider this evidence is a self-serving declaration from one of the Petitioner's counsel in Brazil, Luciana Lóssio, who is opposing the rescission petition aimed at his client, Joesley Batista. Of course he will say that he has "no reason to believe that the Federal Supreme Court of Brazil would not be receptive to the judicial assistance requested in the Application." Declaration of Luciana Lóssio, ¶ 51, ECF No. 5. But nowhere do Petitioners or their counsel offer the expert opinion of a neutral and independent expert on this question. Petitioners may say that Baker McKenzie has not done so either, but there are two responses to that—assembling the evidence in 36 hours is an unreasonably short time frame. To be clear, Petitioners have offered the weakest possible evidence that the Federal Supreme Court of Brazil will consider the requested discovery—a declaration from their own defense counsel in Brazil, who is far from disinterested. Given the lack of unbiased evidence on this point, coupled with detailed allegations in the federal prosecutors' civil action meticulously laying out evidence of Petitioners' involvement behind the scenes regarding Mr. Miller, their argument is totally irrelevant. The documentary evidence submitted by Brazilian prosecutors forecloses Petitioners' "Hail Mary" pass.

2. **Any Testimony on Matters Outsider Ms. Meyer's Personal Knowledge Would be Inextricably Infected by Her Extensive Exposure to Baker McKenzie's Privileged Information.**

Under § 1782, "[a] person may not be compelled to give his testimony or statement or to produce a documents or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a); *Intel Corp.*, 542 U.S. at 260 ("We note at the outset, and count it significant, that § 1782(a) expressly shields privileged material."). This concern is particularly acute when discovery is sought from a law firm concerning its own privileged communications. Courts routinely follow this mandate by denying as unduly intrusive and burdensome Section 1782

6

discovery requests that seek privileged documents and information. *See Hulley Enters. v. Baker Botts, LLP*, No. 17-466, 2017 U.S. Dist. LEXIS 142969, at *17 (D.D.C. Aug. 18, 2017) (denying a Section 1782 application to seek discovery from a law firm where the privilege concerns were "too significant . . . absent a showing that the requested discovery would be of even moderate relevance"); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006) (quashing Section 1782 subpoenas that explicitly sought documents protected by the attorney work-product doctrine).

In *Hulley Enterprises v. Baker Botts, LLP*, the district court faced a substantially similar Section 1782 application. 2017 U.S. Dist. LEXIS 142969, at *16–17. Petitioners sought discovery from a law firm and one of its partners concerning the representation of a former client. *Id.* at *2–6. Petitioners sought to use that evidence in a foreign proceeding. *Id.* at *2–3. The court denied the application based solely on the fourth *Intel* factor—the intrusiveness and burden of the request weighed against the petitioners' failure to show the relevance of the requested evidence in the foreign proceeding. *Id.* at *16–17. The petitioners failed to "connect the dots" between the requested evidence and the foreign proceeding. *Id.* at *15. Specifically, they could not show how evidence from Baker Botts' former client in 2010 and 2011 had any bearing on the key events at issue in the foreign proceeding, which had occurred years earlier. *Id.*

In assessing the burden of the request on the law firm, the court noted that the discovery requested "le[ft] little to the imagination regarding the sensitive attorney-client information potentially at issue." *Id.* at *16–17. The discovery therefore presented the "potential of spawning litigation over collateral issues related to the assertion of privilege, scope, and relevancy, that only . . . impos[e] additional . . . delays and costs on both parties and burdens on

the courts to resolve work-product and privilege objections." *Id.* at *17 (alteration in original) (quoting *Sterne-Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011)). The court concluded that "[t]hese concerns are simply too significant to warrant granting the Application absent a showing that the requested discovery would be of even moderate relevance." *Id.*

The Court should reach the same conclusion here. Ms. Meyer became involved in the J&F engagement in early April 2017. Less than three months later, Baker McKenzie engaged outside litigation counsel at Williams & Connolly to advise the firm in connection with issues relating to Mr. Miller and J&F and prepare its defense for any claims that might be asserted. Starting on June 23, 2017, Ms. Meyer was involved in meetings and calls that were conducted as part of Baker McKenzie's General Counsel's and its outside counsel's investigation and preparation for litigation. As noted, she cannot testify competently regarding events that transpired before April 3, 2017 (when she first billed time to the J&F matter), and Petitioners never allege that she had any significant involvement with Mr. Miller or Petitioners prior to April 6, 2017.

The danger caused by Petitioners' request, however, is that were she questioned regarding her impressions or other persons' thoughts or actions, she might inadvertently and perhaps unknowingly reveal information that came to her only by virtue of Baker McKenzie's privileged investigation and litigation preparation communications. In this regard, Petitioners' request is both unduly intrusive and burdensome and therefore fails the fourth *Intel* factor.

Petitioners' broad document requests also invade Baker McKenzie's privilege. They encompass documents reflecting and communications conveying the provision of Baker McKenzie's privileged information. Document Request No. 1 calls for "Any and all Documents

8

and Communications in [Meyer's] possession, custody or control relating to Mr. Marcello Miller's employment with Baker and Trench Rossi." Declaration of Jared Newton, Ex. 2, ECF No. 3-2 at 8. Document Request No. 2 calls for "Any and all Documents and Communications in [Meyer's] possession, custody or control including any memorandums and attachments thereto that [Meyer] prepared and/or sent relating to the J&F Litigation that was sent on or in connection with [Meyer's] departure from Baker." *Id.* These requests encompass the provision of both Baker McKenzie attorney-client communications, such as Ms. Meyer's communications with Baker McKenzie's General Counsel and its outside counsel at Williams & Connolly, as well as work product prepared in connection with the defense of Baker McKenzie.

### 3. Petitioners Appear to Be Impermissibly Using Section 1782 to Circumvent the Purview of the Superior Court of Washington, D.C.

Finally, the proposed discovery intrudes on a parallel action pending in the Superior Court of the District of Columbia. It is, perhaps, no coincidence that Petitioners' counsel here also represents J&F in the District of Columbia Superior Court action against Baker McKenzie and TRW. Petitioners readily admit that the proposed discovery is relevant to the Superior Court litigation. *See* Declaration of Eric C. Lyttle ¶ 10, ECF No. 4 (recounting how he was told the evidence "supported J&F's allegations in the D.C. Litigation"). Indeed, the "whistleblower" who offered this evidence stated that it supported "the allegations against Baker and Trench Rossi in the D.C. Litigation." Mem. at 12. Those allegations are premised on Baker McKenzie's allegedly negligent failure to conduct due diligence of the bar status of a lawyer at a "sister firm." In contrast, the evidence previewed by the whistleblower offers no indication that the proposed discovery is relevant to the foreign proceeding.

9

### C. In Addition to Invading Baker McKenzie's Privilege, Petitioners' Document Requests are Fatally Overbroad.

Although Petitioners describe their application as "seeking limited and targeted discovery," the actual requests reveal something far different. Petitioners' document requests are overly broad on their face. Specifically, the requests seek "Any and All Documents and Communications" from Meyer relating to two broad topics. Not only do these requests fail to delineate specific communications or documents of alleged relevance to the Petitioners, but they fail to specify any relevant time period for such a sweeping request. This is precisely the type of broad discovery that courts have rejected as unduly burdensome in the context of Section 1782. *See, e.g., In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016) (denying a Section 1782 application where the requests were "not narrowly tailored temporally" and "cover[ed] a span of five to eleven years"); *In re Macquarie Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) (denying a Section 1782 application requesting documents in "broad and virtually all-encompassing categories of information" from six corporate entities); *In re OOO Promnefstroy*, Misc. No. 19-99 (RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (denying a Section 1782 application seeking a "wide array of documents" related to multiple business entities); *cf. James Madison Project v. CIA*, No. 1:08CV1323 (GBL), 2009 WL 2777961, at *4 (E.D. Va. Aug. 31, 2009) (noting in the FOIA context that requests for "all documents 'relating to' a subject [are] usually subject to criticism as overbroad since . . . all documents 'relate' to others in some remote fashion." (quoting *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989))).

### III. CONCLUSION

For the foregoing reasons, Petitioners' Section 1782 Application should be denied.

Dated: February 28, 2019

Respectfully Submitted,

/s/ *Edward J. Bennett*
Edward Bennett (Virginia Bar No. 457112)
Ryan T. Scarborough (Virginia Bar No. 43170)
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Baker & McKenzie LLP*

# CERTIFICATE OF SERVICE

I hereby certify that, on February 28, 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

*Attorneys for Petitioners*

/s/ *Edward J. Bennett*
Edward J. Bennett (Virginia Bar No. 40118)
Ryan T. Scarborough (Virginia Bar No. 43170)
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
ebennett@wc.com
rscarborough@wc.com

*Attorneys for Baker & McKenzie LLP*